Angelina I. DeLucia, Administratrix, *vs.* William Kneeland.

Charles Musante, Administrator, *vs.* William Kneeland.

Third Judicial District, New Haven, June Term, 1928.

Wheeler, C. J., Maltbie, Hinman, Banks and John Richards Booth, Js.

Argued June 8th—decided July 16th, 1928.

*John H. Cassidy* and *James E. McKnight,* for the appellants (plaintiffs).

*William J. Larkin, Jr.,* for the appellee (defendant).

JOHN RICHARDS BOOTH, J. The grounds of appeal in each of these actions were identical, the cases being argued together and so treated in this opinion.

The plaintiff's intestate in each case was a passenger in an automobile driven by one Cianciola, which collided with a Mack truck belonging to the defendant resulting in the death of both passengers.

On cross-examination of Cianciola by defendant's counsel, he was subjected to questions, the obvious purpose of which was to show some criminal proceeding against him as a result of the accident, all of which were excluded upon objection. Counsel for the defendant then said to the court, in the presence of the jury, "May I draw your Honor's attention to section 5705 of the General Statutes in regard to a conviction for crime."

Plaintiffs' counsel immediately moved for a mistrial

which motion the court denied, but cautioned the jury to disregard the statement.

This statement of counsel was improper, but that does not necessarily entitle the plaintiffs to a new trial. In such cases the trial court is invested with a large discretion, and unless the plaintiffs' rights have been injuriously prejudiced before the jury, the exercise of that discretion will not be interfered with. *State* v. *Buxton,* 79 Conn. 477, 65 Atl. 957; *State* v. *Monahan,* 96 Conn. 289, 291, 114 Atl. 102.

In view of the prompt instruction by the court that the jury were to draw no inference from the remark and to disregard any question of conviction of the witness, we do not consider that the plaintiffs' rights were injuriously affected.

The accident occurred shortly before nine o'clock on the evening of January 1st, 1926. The Mack truck, with which the Cianciola car collided, had been traveling in a northerly direction on the highway between Wallingford and Meriden, and shortly prior to the accident had been stopped by its driver, Sleeper, on the easterly side of the highway. While it stood there, a La France truck, also owned by the defendant, was proceeding in a southerly direction and after passing the Mack truck was stopped by its driver, Beers, who alighted and engaged in conversation with Sleeper, who had also left his truck. While they were so engaged, the car driven by Cianciola approached from the south and struck the rear end of the Mack truck, causing the injuries described.

It is the claim of the plaintiffs that the proximate cause of the collision was the negligent parking of the two trucks so close together that there was but twenty-five to thirty-five feet distance between them, both of which were partly on the hard or traveled surface of the highway, with the glaring headlights of the La

France truck turned on, thus blinding the vision of a driver of a northbound vehicle rendering the Mack truck invisible, and interfering with traffic bound in each direction.

This was denied by the defendant who claimed that the distance between the trucks was approximately one hundred and fifty feet, that the La France truck was entirely off the hard or traveled portion of the highway, and only the rear left wheel of the Mack truck was upon the hard surface to the extent of two feet.

The defendant offered the testimony of two witnesses, one, the prosecuting attorney of Wallingford and the other a police officer, also of that place, the first of whom testified that he arrived at the scene of the accident at nine-twenty p. m. and that the distance between the trucks was about one hundred feet. The other witness stated that he arrived there at nine-forty and measured the distance between the trucks which was one hundred and fifty feet. To this testimony the plaintiffs objected until it appeared that the trucks had not been moved from the time of the accident, which objection was overruled upon counsel stating that he should later connect it.

Subsequently the defendant called both Sleeper and Beers, the former testifying that his truck was not moved until every one had gone. Beers was then asked when his truck was moved and who moved it. His answer was only, "I did."

Plaintiffs then moved that all the testimony of the two former witnesses relating to measurements and distances be stricken out on the same ground that the original objection had been made.

While the record indicates that both court and counsel may have misapprehended the effect of Beers' testimony, the fact remains that the connection promised

by counsel had not been made. Sleeper's testimony was that his truck was not moved until everyone had left, but that of Beers was simply to the effect that when his truck was moved, he himself did it, but not specifying when. The court therefore should have granted the motion to strike out the testimony. The distance of the two trucks from each other, half an hour after the accident, did not tend to prove that that condition existed at the time of the accident, and without such proof it was inadmissible. *Antel* v. *Poli*, 100 Conn. 64, 123 Atl. 272.

As this question of distance was one of the principal issues in the case, the ruling must be held to be erroneous.

The remaining grounds of appeal relate to the refusal of the court to charge as requested and to a portion of the charge as given. But two of these require consideration, the others being based on requests to charge, which were substantially complied with, although not in the language of the requests.

The plaintiffs requested the court to charge that the question of contributory negligence on the part of the deceased should be eliminated and not considered by the jury. The record shows that evidence was offered by the plaintiffs to prove that neither of the deceased had any control or direction over the management and operation of the car in which they were riding and did not attempt to exercise such direction or control. No evidence was offered by the defendant to contradict this, nor does it appear that the defendant made any claim that the negligence of the deceased in any way essentially contributed to the injuries. The court might well have complied with the plaintiffs' request, but in view of the charge as given, which correctly expressed the rule in such cases, we do not consider that error was committed.

The plaintiffs also complain of that portion of the charge given in response to a question of the foreman of the jury, asking if the shoulder of the road was a part of the traveled highway, under the law. The court's response was as follows: "In my instructions to you I have told you that the statute referred to the traveled portion of the road, and that was that part of the highway customarily traveled by vehicles upon the highway. Does that answer your question?

"The Foreman. Under the law?

"The Court. Well, that would be the law. It would be a question for you to decide which portion is customarily traveled by persons upon the highway, and in the case of a State highway, it is that portion of the road which is customarily traveled, or that portion which is prepared for the ordinary travel upon the highway. I think that should be distinguished from the shoulders of the road."

The only portion of this which is complained of is the last sentence.

This highway was one maintained by the State and at this point had a hard tar surface twenty-two feet wide. On each side was a shoulder, so-called, topped with a surface coating of dirt and gravel, the width of the easterly one being five to six feet and that of the westerly one ten feet. There was some dispute as to whether the shoulders were lower than the other portion or formed an unbroken surface with the tar without breaks or deflections.

The statute referred to by the court was a portion of Chapter 151 of the Public Acts of 1925, reading as follows:

"Sec. 4. . . . No vehicle shall be permitted to remain stationary upon the traveled portion of any highway at any curve or turn or at the top of any grade where a clear view of such vehicle may not be

had from a distance of at least one hundred and fifty feet in either direction. . . . No vehicle shall be permitted to remain stationary upon the traveled portion of any highway within fifty feet of the point where another vehicle which had previously stopped, continues to remain stationary on the opposite side of the traveled portion of the same highway."

The trial court committed no error in making a distinction between the shoulders and the paved portion of the road. Whether the last sentence of this portion of the charge would have in itself constituted harmful error as indicating to the jury that the shoulders were not to be included in the traveled portion of the roadway, we need not decide in view of our conclusion that there was error in the ruling on evidence.

There is error and a new trial is ordered.

In this opinion the other judges concurred.