[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendants have moved to set aside the jury's verdict, claiming, inter alia[1], that certain statements made by plaintiff's counsel in closing argument caused them manifest injury and deprived them of a fair trial.
This case was tried to a jury before me, beginning on June 10, 1998 and concluding with the jury's verdict on July 17, 1998. The plaintiff alleged that he had suffered serious personal injuries due to the negligence of the individual defendant, Forrest Haist, in the operation of a tractor-trailer truck owned by the corporate defendant. The jury awarded economic damages in the amount of $1,144,489.00 and non-economic damages in the amount of $137,500.00 and found the plaintiff to have been 25% negligent in causing the collision between the vehicle he was operating and the defendant's truck.
 The setting aside of a verdict can occur . . . for two general reasons. First, a trial court may set aside a verdict on a finding that the verdict is manifestly unjust because the jury, on the basis of the evidence presented, mistakenly applied a legal principle or because there is no evidence to which the legal principles of the case can be applied . . . Second, a verdict may be set aside if its result justifies a suspicion that a juror or jurors were influenced by prejudice, corruption or partiality. A trial court's review of a motion to set aside a verdict, therefore, will focus on CT Page 13746 one or both of the two tests. (Citations omitted.)
Foley v. Huntington Co., 42 Conn. App. 712, 724-25 (1996). I understand the defendants' remaining claims to implicate both tests.
The defendants, of course, have the burden of proof on their motion. "The burden is on the (defendant) to establish that, in the context of the proceedings as a whole, the . . . arguments were so prejudicial that they deprived him of a fair trial." Nevers v. Van Zuilen, 47 Conn. App. 46,51-52 (1997).
A preliminary issue which applies to both of the defendants' remaining claims is the effect of their failure to move for a mistrial in response to the allegedly improper arguments of plaintiff's counsel. First, the plaintiff has cited no authority, and I have found none, for the proposition that the defendants are barred from making their claims in the absence of such a motion. The defendants promptly voiced their objections at the close of plaintiff's argument, requested curative instructions and excepted to my failure to give them. Therefore, the error, if any, was properly preserved and may be raised by this motion to set aside the verdict.
At the same time it is at least relevant to my decision whether such an extreme remedy is required that the defendants did not request its equivalent when they could have during trial. They apparently believed then that curative instructions would have been adequate to remedy any injury although now they argue that "(p)laintiff's argument was so inflammatory that no curative instruction could remove the prejudicial impact". See, e.g., Defendants' Supplemental Memorandum of Law, dated September 14, 1998, p. 4.
 The Connecticut Supreme Court has looked with disfavor on attempts to claim unfair prejudice after an unfavorable verdict by moving to set aside the verdict where there was no prior motion for mistrial. In Archambeault v. Jamelle, 100 Conn. 690, 124 A. 820 (1924), the defendants claimed that plaintiff's counsel improperly displayed excluded evidence and made improper remarks during closing argument. After a verdict for the plaintiff the defendants moved to set aside the verdict and for a new trial on the grounds that the foregoing misconduct deprived them of a fair trial. The trial CT Page 13747 court denied the motion. The Supreme Court upheld the decision of the trial court and stated:
 We think that the action of the trial judge was sufficient to avert any harm to defendants in the consideration of the jury on account of these incidents, especially in view of fact that it does not appear from the finding that defendants' counsel considered the matters of sufficient importance to then move for a dismissal of the jury from further consideration of the case. That was the proper time and method, rather than to first take the chance of a favorable verdict by the jury. 100 Conn. at 695.
 In the following cases the Court also cited in failure to previously move for a mistrial as one basis on which to deny a motion to set aside the verdict on the grounds of prejudicial conduct: Furber v. Trowbridge, 117 Conn. 478, 169 A.2d 43 (1933); Altieri v. Peattie Motors, Inc., 121 Conn. 316, 321, 185 A.2d 75 (1936); Ferino v. Palmer, 133 Conn. 463, 465-66, 52 A.2d 433 (1947); Jacek v. Bacote, 135 Conn. 702, 706, 68 A.2d 144 (1949).
Miller v. Sherwin-Williams Co., Docket No. CV93-67675, judicial district of Middlesex (April 10, 1995).
While I do not consider that the defendants have waived their right to raise these issues, I will consider their failure to move for a mistrial as one factor in determining the necessity of a new trial to remedy the injury of which they complain.
The "Golden Rule"
At the close of his first argument to the jurors plaintiff's counsel, in suggesting a method for measuring non-economic damages, asked the jurors to imagine themselves holding a job which consisted of "be(ing) David Nastri", with all of the damages counsel claimed the evidence showed, and to "(t)hink about" what "someone would have to pay you to assume his lifestyle on a yearly basis, then multiply that times 37.9 years, and that's how you'll come up with your appraisal of what the non-economic component of this case is worth". The defendants objected at the conclusion of the argument, characterized it as a "golden rule" argument and requested that I tell the jurors not to place themselves in the shoes of the plaintiff in deciding this case. I declined to do so and instructed the jurors that CT Page 13748 "sympathy for . . . any of the parties in this lawsuit has absolutely no place whatever in this case. (This) consideration may not influence your deliberations in any way". I further instructed the jurors that they were free to disregard the suggestion of plaintiff's counsel as to this approach to measuring damages, characterizing it as "not evidence itself but only arguments". I concluded by telling the jurors they were "free to disregard any suggested approach in whole or in part as you see fit".
A "golden rule" argument is one that urges "jurors to put themselves in a particular party's place . . . or into a particular party's shoes". (Citations omitted). Walton v. City ofManchester 140 N.H. 403, 666 A.2d 978, 980 (1995). Or, as a Connecticut commentary puts it, a request that "jurors award such damages to the plaintiff as they would like to be awarded if similarly situated". Fitzgerald Yules, 6 Conn. Practice § 9.18, p. 273, fn. 6. Such arguments are improper "because they encourage the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence". Walton v. City of Manchester, Id. They have also been equated to a request for sympathy. DelawareOlds, Inc. v. Nixon, 367 A.2d 178, 179 (Del. 1976).
The only Connecticut case in which a "golden rule" argument is discussed is Begley v. Kohl Madden Printing Ink Co.,157 Conn. 445, 452 (1969). There the Court upheld the trial court's refusal to instruct the jury to disregard a "golden rule" argument made by defense counsel because it was "an offhand remark", "not stressed" and "there was nothing contained therein to arouse the sympathy of the jurors or inflame their passions".[2] It is clear from Begley that not every "golden rule" argument is cause for a curative instruction or for a new trial in the absence of one.
In ruling on the defendants' objection to this argument I analyzed it as an attempt to "concretize damages". While I adhere to that construction of the plaintiff's argument, having read the cases cited by the parties in their post-trial briefs, I cannot blink the fact that it comes close to the kind of appeal to sympathy or self-interest found in the typical "golden rule" argument. It is similar to the argument condemned in Russell v.Chicago, Rock-Island Pacific R.R. Co., 249 Iowa 664,86 W.2d 843, 848 (1957), in which counsel asked how much money the jurors would take to go through life as the plaintiff. Even in a case CT Page 13749 where the trial court believed, as I do here, that the word "you", which is sometimes the tipoff to a "golden rule" argument, was used in an indefinite or hypothetical or generic sense and "was not personally addressed to the members of the jury", the appellate court concluded that "the argument was quite close to the improper borderline, could have been prejudicial, and should not have been permitted". Phillips v. Fulghum, 203 Va. 543,125 S.E.2d 835, 840 (1962). Significantly, however, the Supreme Court of Virginia agreed with the trial court's conclusion that, "even if it be assumed that the argument was improper, it was not prejudicial and did not influence the jury to bring in a verdict which was excessive". Id.
That is the case here as well. First it is important to recall that the argument was addressed only to the jury's calculation of non-economic damages.[3] The jury's award was $137,500.00. While not a paltry sum, this is certainly a modest award when it is considered in connection with the award of over a million dollars for economic damages. That award included a very large component for lost economic capacity over the rest of the plaintiff's life expectancy,[4] due primarily to the pain he suffers from recurrent, severe and unpredictable headaches. In addition he adduced evidence of a permanent disability of the brain, a serious inability to participate in and enjoy the activities of life in which he had engaged prior to the collision, as well as injuries to his neck, shoulders, spine and wrist. This evidence could have formed the basis of an award of non-economic damages far greater than $137,500.00.
Furthermore, the plaintiff's argument did not go unremarked on in my instructions. The members of the jury were cautioned in strong terms not to let sympathy play any role in their decision, and "golden rule" arguments have been analyzed as appeals to the sympathy of the jurors. They were specifically instructed that they were free to disregard the entire argument that was the subject of the defendants' objection. That the jury was not carried away by that argument is shown not only in the amount of their award of non-economic damages but in their assessment of 25% of the responsibility for his damages to the plaintiff, himself.
Therefore, whether or not plaintiff's counsel crossed the line into "golden rule" territory, I conclude that the defendants suffered no injury as a result of his argument and were not deprived of their right to a fair trial. CT Page 13750
The "Rape" Reference
During his first argument to the jury plaintiff's counsel likened defense counsel's tactics at trial to those of "criminal defense lawyers . . . in rape cases", i.e., "they attack the victim". Although defense counsel expressed his "concern" about this allusion at the close of argument, misremembering it as stating that he "represent(ed) a rapist", he requested no curative action on my part. The next day, before deliberations resumed but after the jury had deliberated for about an hour the previous day, counsel renewed his objection and requested that the jury be told that an argument that he was "representing a rapist" was improper and should be disregarded.
I did not take the plaintiff's argument then, nor do I now, as a reflection on the defendants' character. It was clearly an attack on defense counsel's conduct of the case. As such, it was understandably resented by counsel and, in my opinion, was better left unsaid. The question, however, is whether plaintiff's "counsel's remarks . . . prejudice(d) the ability of a party to obtain a fair trial". Yeske v. Avon Old Farms School, Inc.,1 Conn. App. 195, 204 (1984).[5]
In analyzing plaintiff's counsel's closing argument, I must heed the many cases holding that "some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument . . ." I must review "the comments complained of in the context of the entire trial." (Citations omitted; internal quotation marks omitted.) Statev. Hansen, 39 Conn. App. 384, 395 (1995).
At trial and in argument on their motion to set aside the verdict the defendants lay great stress on the Yeske case,supra. Suffice it to say that the level of abuse of counsel inYeske was different in kind not just in degree from the single remark made by plaintiff's counsel here. It pervaded the "entire argument", id., 204, and was considered along with the "courtroom behavior"[6], id., of the offending counsel during trial in the trial judge's decision to set aside the verdict. CT Page 13751
A case closer to this one is Rizzo Pool Co. v. DelGrosso,232 Conn. 666 (1995). In that case plaintiff's counsel referred to defense counsel's argument as "sleaze, slime and innuendo", the likes of which he had never seen in his many years of practice. This was only one of the objectionable remarks made by the same counsel not only in closing argument but throughout trial. The Court concluded:
 At worst, any prejudice stemming from counsel's comments was minimal. The issues were closely contested by both sides, and the defendants themselves vigorously pursued their claim that the plaintiff had engaged in fraud and deception. In addition, the factual issues were not complicated, and there is little risk that counsel's objectionable remarks created undue confusion in the minds of the jurors. Moreover, the comments were neither so frequent nor so outrageous that they inevitably influenced the jury and, finally, any possible harm to the defendants likely was eliminated by the trial court's clear and emphatic charge to the jury that its verdict was to be based solely on the evidence and not on the remarks of counsel. Id., 689.
The "clear and emphatic charge" given in DelGrosso, which the Court found sufficient to dispel any possible prejudice, made no specific reference to counsel's objectionable remarks either in argument or at other points in the trial. It consisted of the same admonitions against sympathy and against going outside the evidence to find facts and the same injunctions to base their verdict on the evidence and not on arguments of counsel as were given by me to the jury in this case.
It is fair to say that the defense in this case on the issue of damages consisted of a thoroughgoing attack on the credibility and integrity of not only the plaintiff but also his family members who testified and the expert witnesses who testified in substantiation of his damage claims. No witnesses were offered by the defendants on any of the damage issues. While that is the prerogative of the defendant in any case, and there is nothing improper in the efforts of these defendants' counsel to conduct his case in this manner, it is in the context of this defense that the sole remark of plaintiff's counsel complained of must be evaluated.[7]
Counsel's attack on opposing counsel's argument in DelGrosso
was at least as objectionable as the complained-of argument here CT Page 13752 and was part of a pattern, unlike the single reference here. Nevertheless, noting that "the defendants themselves vigorously pursued their claim that the plaintiff had engaged in fraud and deception", as did the defendants here, the Court found that the "defendants have not demonstrated that they are entitled to a new trial due to the inappropriate remarks of the plaintiff's counsel". Id.[8]
I reach the same conclusion here. My appraisal of the "atmosphere prevailing in the courtroom", Yeske v. Avon Old FarmsSchool, Inc., supra, 205, throughout this trial leads me to conclude that the single remark of plaintiff's counsel, considered in the context of the case as a whole, was not prejudicial to the defendants. In view of the isolated nature of the remark and of the instructions given, no additional cautionary instructions were required.
The verdict, itself, shows that the jurors were not influenced by "prejudice, corruption or partiality" engendered by this or any other of the arguments complained of by the defendants. This jury deliberated for two full days and parts of two other days. At the conclusion of those deliberations they returned a verdict which gave full value to the defendants' claim of contributory negligence and provided for compensation in an amount which the defendants do not claim was excessive. This was not a jury swept away by rhetoric.
It has long been the law in this state that the jury's verdict should not be set aside and a new trial ordered unless it is apparent that "injustice either was, or might have been done" at trial. Brown v. Keach, 24 Conn. 72, 76 (1855). The verdict's "manifest injustice" (must be) so plain as to clearly indicate that the jury has disregarded the rules of law applicable to the case, or were influenced by prejudice, corruption, or partiality in reaching a decision". (Citations omitted.) Robinson v. Backes,91 Conn. 457, 459 (1917). No such injustice is apparent in this case. Accordingly, the defendants' motion to set aside the verdict is denied.
BY THE COURT
Shortall